Okay, we'll call the next case, Mrs. Ressler's Food Products vs. KZY Logistics Inc., Mr. LaRocca. Good afternoon, Your Honors. May it please the Court, Ralph LaRocca, on behalf of the defendant, appellant KZY Logistics. Excuse me, Judge Greenberger, you... I'm here. Okay, I should have... I should have made sure of that before I called the case. Well, I'm here. Your Honor, may I request two minutes? It's harmless, Your Honor. I'm sorry. What was that? It's harmless, Your Honor. Okay. Because I was here. Okay. Mr. LaRocca, could I... May I request two minutes? Yes, please, Your Honor. Okay, that request be granted. Can I ask you a threshold question and thereby prevent you from even starting? Yes, Your Honor. That is a jurisdictional one. It's a threshold question for us. And that is whether you concede personal jurisdiction here, noting that the district court in footnote two, that there was specific jurisdiction on the grounds that your client is alleged in the footnote to be the one to pick up the product. Your Honor... That is apparently not the case. It's an interesting issue that has not been raised. I was discussing that with counsel actually earlier. Under the CARMAC Act, there's a question as to whether there is personal jurisdiction based on the fact that Longitude Logistics actually picked up the load in Pennsylvania, transported it to Fairfield, New Jersey, and then hooked it up to my client's trailer. That issue was not raised initially. Well, it's a jurisdictional issue, so I ask whether you dispute that there is sufficient context for this general jurisdiction. I dispute that there was contact with the State of Pennsylvania. So do we have a threshold issue that needs to be addressed as to whether there's even jurisdiction for us to proceed with the case? Your Honor, I'm not really prepared to answer that. I think we would have to address that issue under the CARMAC Act at some point. If, in fact, default was vacated, that was an issue that we were going to explore because, in fact, there was no contact. Longitude Logistics was, in fact, the trucking company that picked up the product in Pennsylvania and transported it to New Jersey. My client transported it from New Jersey to California, presumably passing through the State of Pennsylvania, which may have created, and they are in the trans-state business, and it may create issues. But I did not brief that issue, and I'm not really prepared to argue it. Okay. On another threshold question, and this one going to the vacation of a default judgment, that is the threshold question of prime and facial meritorious defense, the CARMAC amendment is, of course, a strict liability statute. And we've said in Data Spawn and as has the Supreme Court in Missouri Pacific that there are only certain defenses, including a denial that your client was negligent and the allegation that the shipper was the one that caused the damage. Have you raised in either the answer or the affidavit, have you raised that defense, those two parts of the defense that we said in Data Spawn constitute a prime and facial defense? Yes, Your Honor. Our position is that Mrs. Ressler, when they provided the product to Longitude Logistics at their location in Philadelphia, the product was never tested for temperature. The bill later never reflected that that was a fact on it. When the product was brought from Pennsylvania to New Jersey and it was hooked to the trailer in New Jersey, our clients set the refrigeration system to the required temperature, transported the product to California, and delivered it with the refrigeration system at the required temperature. We submitted it as part of the affidavit. What happened was when they arrived and the company in California refused to accept it because the product was hot, for lack of a better term. It was reading higher than the required temperature. My client sent the driver immediately to a Thermo King location in Fontana, California, to have a full diagnostic done on the refrigeration and a printout, which was submitted and attached to our affidavit that indicated that the temperature was set in conformance with the instructions and it was maintained in conformance with the instructions. Therefore, the error in the issue with the heat had to happen prior to the product being delivered to Fairfield, New Jersey, either within the warehouse and the loading within Mrs. Ressler or from the transport of Longitude Logistics. And our intention, and it's detailed in the affidavit, was to bring in Longitude Logistics, who was an essential party to this action. But there's not a defense under the Kermack Amendment. There's not a defense for another carrier to have been at fault. That's something that's left for the carriers to work out. The defense that has been identified by our court and the Supreme Court is that the shipper was at fault. Have you specifically alleged in the affidavit that the shipper is at fault? Yes, Mrs. Ressler, yes. How about the issue of culpable conduct? Your Honor, my clients immediately took the claim from Mrs. Ressler. They submitted it to their carrier. Their carrier was working with Mrs. Ressler with regard to trying to see what could happen with this claim. Nothing transpired. My clients were served with a complaint in December of 2015.  The carrier was claiming that they were not responsible. Well, they knew that the carrier was taking a wait-and-see approach, and they were proceeding under basically a reservation of rights, but they never took the position that they were not going to cover them, and they certainly didn't take the position that they were going to defend them. Okay, so in early December, just about a year ago from not being taken, they get served, and they know they have 20 days to respond, and Halliday is interviewed, I'll grant that, but they don't file an answer. They don't file any response of pleading. They don't have you enter an appearance. They don't have anybody enter an appearance for them, and January 6th arises. That's correct, John. I mean, you know, it's not a case where they didn't know about it. It's not a case that they said that, you know, early December we were on a trip, and the notice came in, and it got served, and our bookkeeper was tied up for the holidays. She put it in the right-hand drawer. We didn't know about this until we got notice of the hearing in January, and even then when they got notice of the hearing, which they received, they didn't show up for the hearing before the district court. I mean, that's correct. I can't dispute that. So why isn't that culpable? Why isn't that willful? I mean, it's not willful to the extent that they did take the effort to have an answer filed. They did submit it immediately to a carrier for an answer. We say we use the date December 22nd because that's the date that the letter was sent out, advising them that an answer would not be filed on their behalf. But that's not when the letter was received. It was received probably right after Christmas because of the holidays. I'm giving you that. Yeah. And then you have New Year's, and January 4th defaults as after. And I understand that they didn't do anything after January 4th or January 20th. All they probably would have had to do is send a letter and ask for an extension of time to file an answer. And I agree with that. I sent many a letter like that asking for a couple more days. And I have too, but I'm an attorney. These are laymen. They're truck drivers. They could have called Mr. Resnick, as the district court said. He's a very nice man. I'm sure he would have taken a phone call and given him an extension. Yeah, okay. They didn't. Were they able as a corporation to represent themselves in that capacity? They are not. And they have no ties to Pennsylvania. They do not have a Pennsylvania attorney. I am a New Jersey attorney. I retain the Pennsylvania Council forum. I refer them to Pennsylvania Council. So they have no ties to the jurisdiction. They didn't have a local attorney. And days went by. They got on it in the beginning of February. But what we're talking about is less than a month since the declared default judgment was entered, less than two months from the date they were supposed to file an answer. I mean, I think that's more telling. It's less than two months from the date they were supposed to file an answer, and the motion to set aside default judgment was filed. Now, they didn't, you know, they allege some prejudice. They do allege some prejudice. Are you in contact with, is your client in contact with the driver? Because it seems like the driver is going to be a key witness. I wouldn't be able to answer that question at this moment. I think they are, but I don't know for certain. But in terms of delay, again, the delay was less than a month. And the only prejudice that was alleged in their opposition was that they had to file for default judgment, which I understand, and that they had to docket that judgment with the district court in New Jersey, which I understand. And I believe the alternative sanction of attorney's fees and costs would be appropriate. I mean, I think it's very minimal prejudice that could be rectified by attorney's fees and sanctions. But I don't see any further prejudice there. And those two factors alone, I think, are covered. One, there's no prejudice, and two, there is an alternative sanction. There is a meritorious defense that we did not handle the product from the inception and that Mrs. Ressler did not document the temperature on the bill of lading when they gave it to Longitude Logistics, thereby creating an issue as to whether or not the product was already defective leaving their warehouse. And we don't have to prove this by a separate judgment standard. We just need to be able to show that there is a viable defense, that we do have a viable argument. And by virtue of the fact that that product was in other hands and it was not documented when it was picked up that hand either by Mrs. Ressler or by Longitude Logistics, it creates an argument. It creates a defense. I submit that we satisfy all four factors under the MASCO standard, but even some argument that we only satisfy the two, and the two are against us, as the district court said, that close call should go towards having this matter decided on the merits. And this court said it many, many times. The Supreme Court, the Third Circuit case, National Hockey League versus Metro Hockey Club, indicated that default judgments, dismissal of prejudice, that's been a real drastic, really villatory cases. I believe that case was 17 months. There were warnings. There were multiple extensions. Again, in this case, we're talking less than two months total. And I believe the Speaker case talks about the fact that how forth and quickly that most of the set-aside default judgment was filed should be taken into consideration and should weigh in favor of the defaulted party. Again, having said that, I believe that this- I wanted to ask you a question. As a Pennsylvania practitioner, I know what the practice was like, and I think I know what it is today. But what about New Jersey? Snap judgments looked upon favorably or unfavorably? I think this would have been vacated as a matter of form. This would have simply been vacated, and we would have proceeded. Quite frankly, the prejudice to Mrs. Ressler was that it wasn't vacated, and I wasn't able to bring in the coward on the DJ action as of yet, and we've lost a year that we could have been moving along in litigation, quite frankly. But yes, this would have been in state court vacated as a matter of form. We were a little surprised. We were a little surprised, to say the least. Anything else? No, that's it. Thank you very much. Mr. Resnick? Thank you. Please, the court. My name is Jeff Resnick from Sherman Silverstein. I'm here with my colleague, Alan Milstein, on behalf of Mrs. Ressler's Food Products. I know you've got a client there, a good client, small business. But, you know, come on, 50 days. Okay, so this is not exactly a snap judgment, but pretty quick. So let's look at it under interviews. Where's the prejudice? All right, let's deal with the prejudice first. Where's the prejudice? Here's the problem with the prejudice argument. I don't know whether Mrs. Ressler's has been prejudiced, because the defendant, Casey White, what they never did was indicate that they had the driver, they had his testimony, or that they had, I don't even have a bill of lading. They've never attached a bill of lading. All they produced is a graph, and I'll get to the graph in a second, but they've never indicated they've preserved any evidence. They've never preserved the truck for inspection. So what? I mean, let's suppose they filed an answer immediately. You may not even have a trial date yet. No, but as you can see from the way the case progressed, we were quick moving. It is an important issue to our client. I can understand that. And we filed, we served them, and then we had the 20 days, which ended on December 29th. I waited until after the New Year. Yeah, but I mean, when you got notice that they had counsel, I mean, this case could have been resolved by opening that judgment back in March. But I didn't have notice they had counsel until shortly before they moved to vacate the default judgment. Okay, which was when? Fifty days after the end of February. Okay. You could have opened this judgment very easily and proceeded, and you would have been able to preserve what you needed to preserve. You're saying I could have agreed to vacate. Correct. I certainly could have. But, however, what I would have wanted, and it's outside the record, what I did want were the costs that my client had paid. That was not offered. The district court identified that as an appropriate alternative sanction, and you could be, you still could be, awarded that. I mean, the district court found on the four considerations for vacating the default judgment that as to prejudice, you didn't identify any, as you haven't here. I mean, speculating that there might be prejudice is not prejudice as we've defined it, and that there could be an alternative sanction. And the district court identified what that would be, and it's the very thing you're saying that you feel you would be entitled to, and you could well be awarded. Those two seem, if the district court not abuses discretion as to those two factors, perhaps you could focus on the other two where there seems to be some significant dispute. Well, I certainly agree with you. In our opposition, I did say alternatively, if you're going to vacate, let me make application. So I'm not disagreeing with you, and it's not like I shut the door when the call came. I just had no amount of money offered to me to make that decision. And the prejudice, you're right, I don't know, because it was never presented to me. I couldn't be in a position to say there was prejudice, because I didn't know if they had preserved the driver. So the district court denied the motion on the basis of saying there was no meritorious defense. But the Carmack amendment provides, identifies there's only a few limited defenses. They include the denial of negligence by the carrier and an allegation that the shipper is at fault. Do we have both of those in this answer and affidavit? Okay. So I think we have neither in the answer itself. What the trial court said under the case law is that we look only to the answer. What case law are you relying on to say that in a motion to vacate a default judgment, the district court can't look to an affidavit attached to that motion, as well as the answer that's also attached to that motion? In the trial court's opinion, it cited United States v. 55,000, 518.05 U.S. Currency, 728 F. Second, 192. And in that case, the court held that the district court is to look to the proposed answer. And mere general denials does not satisfy the party's burden, the party moving to vacate's burden. We didn't say to the exclusion of other pleadings or to the exclusion of an affidavit that's also attached to a motion to vacate a default judgment. What would be the purpose of saying of the two things that are attached in deciding the motion, the district court can't look to both of those pleadings? The case here, I did not address it, but it did say we look to the answer. It didn't invite or didn't suggest that additional information could be added. The trial court did go that one step further and did look at the affidavit and found that the affidavit was, again, a mere denial. But why isn't that clearly erroneous? I mean, there is certainly the denial of negligent conduct on their part, but that is also something that's identified as a necessary component to a prime evasion defense under beta spawn. They also allege, and this is quoting at Appendix 28, that Mrs. Ressler wrote in Longitude's trailer with hot product. Well, actually, what I think that the appellant suggested was that it is either or. It's not them. It could be Mrs. Ressler or it could be the other company. That's not saying that it was Mrs. Ressler. That's not giving the concrete defense that it is Mrs. Ressler. That is an allegation, true and disjunctive, but it is a defense that they have offered. They've offered it specifically in the statement that they make, and then even more specifically, they attach the records of the temperatures of refrigeration of the truck that indicate in a very concrete way that at the point that they had it for the entire trip, that there was not any variation in temperature that took it outside of the designated range. I think the graph is a red herring because if you look at the graph and it's 831 through 33, what it mentions is that there's a selected range of 20 to 50 degrees Fahrenheit, but if you look at the graph, it's consistently over 50 degrees. So I agree that the record was submitted, but the record does not suggest what the appellant has offered it to suggest. By its own document, they've transported meats at a temperature higher than by their own admission they were supposed to transport. This graph is not a defense for them. It's a liability for them. You might debate the support for the defense that they have alleged, but we have to deal with the district court's statement that there is nothing here but a general denial, and the district court said that it boils down to a bare denial of the allegations of the complaint, and what they've actually stated in the disjunctive that the shipper was the one who delivered hot product is the exact prima facie defense that we've said and the Supreme Court has said constitutes a prima facie defense under the Carmack Amendment. Why isn't that clear error in the district court's recitation of what the record reflected as to a prima facie defense? Because I don't believe, and I don't believe the district court believed that saying, it's not me, it's them, is anything more than a bare denial because they didn't produce anything to suggest that it could be Mrs. Ressler's or it could be the other. I guess most importantly, is it facially unmeritorious? It is facially unmeritorious. That's a pretty stiff burden. That's a pretty stiff burden. I think we're here under not just the stiff burden of abuse of discretion, but the stiff burden of vacated default. Facially unmeritorious, that's a heavy burden to recall. Well, maybe, but that's why we have district courts to review the record, to look at the evidence presented, and to make their decision. But the district court didn't articulate that standard and rested on the idea that there was a general denial without engaging what is actually pleaded here. And the exhibits are attached. Well, except that he did, the trial court did say that he reviewed the affidavit, and he found that the evidence in the affidavit did not rise to a mere denial. And that can be, look, if this was a de novo review, then I think a court could have perhaps a different view, I would argue, against which you can have that different view. But here. Can you just, thank you. I'm sorry, was there, did I miss? No. It's in the background. Okay. But the point is, Judge Greenberg, did you have anything that you wanted to add here? You know, the only thing I can add, somebody raised the question of the state courts in New Jersey having been a state judge since 73, 87. I have to tell you, I was vacated. Good question. Look, if the district court judge was a New Jersey state judge, maybe we're not here. But isn't that our standard, too? And we've said in Tozer, any doubts should be resolved in favor of the petition to set aside the judgment so that cases can be decided on the merits. We have a strong presumption in favor of proceeding where our four factors are not met. So far, I think we're in agreement two of them are not, or at least the district court has said that. As to meritorious defense, whether it is not facially invalid, that's a hurdle for you to get over. And let's return to the question of culpability. Culpable conduct, and what is the standard that our court has articulated? Because the district court seems to have relied on and cited to a District of Connecticut case. But our case law, again, sets a very high threshold for the party opposing the vacation of a default judgment. Negligence isn't enough, right? Negligence is enough, except that, again, and I understand what Your Honor is saying, and if you were the district court judge, I have a feeling how perhaps you would rule, but this trial court judge specifically said he reviewed the affidavit, and in his judgment found it to be a bare bones denial. And I don't think that should be debatable at this level. I was moving on to our standard for culpable conduct. I'm sorry, excuse me. And whether negligence, I mean, obviously, with strict liability in the preemption under the Carmack Amendment, neither state law claims, including negligence, are not really part of the picture. But as to what we need to consider, including the other factor we haven't discussed yet, culpable conduct, we've said explicitly that the culpable conduct standard requires more than mere negligence be demonstrated. It is, we've talked about it in terms of willfully or in bad faith, that we need to see flagrant bad faith. And in the cases where we have upheld the file of vacating the judgment, it's involved reckless disregard for repeated communications from the court and plaintiffs, repeated failures to respond that span years. With very similar facts in Damasco, for example, we said it was an abuse of discretion for the district court not to vacate the default judgment. So the difference, I think, here is that the acts were committed by the litigant itself. Now, this was not a two-month matter. This appellant had been aware of the problem with the product. As soon as it happened, March of 2015, it submitted to its carrier, and unbeknownst to Mrs. Ressler's, received a quasi-denial letter in August of 2015. That put it on notice that there was going to be a problem. This appellant did nothing. It never contacted Mrs. Ressler's. Instead, it waited for Mrs. Ressler's to file suit. It did nothing. We moved for entry of default. They were aware. It did nothing. Judge Dalzell issued an order the next day, giving Mrs. Ressler's, I think, 20 days to file its motion for default judgment, or else he was going to dismiss Mrs. Ressler's action. That was sent to KZY. We then filed our motion for entry of default. That was sent to KZY. This is beyond just Mrs. Ressler's. I can understand the frustration, and I can picture the timeline. But, unfortunately, we're here now, and we have a standard. Judge Greenberg, there's a lot of noise coming over. I'm sorry. One of my papers are out. We have a super sensitive line, I believe. We're here with a standard that's been set by our prior case law. As Judge Cross had said, neglectful isn't enough. Willful and bad faith. Can you fit their conduct into either of those on the culpability question? Well, I think this was willful. I don't know bad faith because I haven't spoken to this defendant. But I believe it was willful because they had noticed as soon as it happened, once the insurance company said no, once I filed my complaint, once I moved for default, once the judge issued his opinion, directing me to file for default judgment, and then again when I filed for entry of default judgment, and then once the opinion came in. So you have seven occurrences where they didn't do anything. And I think that goes beyond mere neglect. Listen, I agree with you. If the only issue was they get it on Christmas Eve and then they don't do anything and it's a week later, fine. But that's not what we have. We have willful indifference. We have a defendant that stuck its head in the sand and didn't care until we were at the very last stage, until I went to New Jersey and docketed my judgment. That's when this became an issue. And I don't think, and respectfully, Ms. Ressler doesn't believe that that conduct should be rewarded. Do you really want to go out and try to sell a truck to satisfy this? Listen, I'm available for any discussion. Okay. Let's hear anything further. Thank you. I'm out of time. Okay. Thank you. Mr. LaRocca. Thank you, Your Honor. You know, briefly with regard to meritorious defense and the general denial in the answer, that is correct. However, if we look at the complaint, the complaint is not an extremely detailed complaint either. It alleges certain things. It has background, but it alleges certain things. The one thing it alleges is that Mrs. Ressler contracted with my client and my client picked up the load and delivered it. That's denied. It's a general denial in the answer. But in the affidavit, it's detailed that that's not correct. It's detailed that Mrs. Ressler contacted Blue Grace. Blue Grace is a trucking broker. Blue Grace then contacted Longitude Logistics, which is also a broker and a trucking company out of California. Longitude Logistics picked up the load, and they transported it to New Jersey, and they contracted and made a deal with my client. So it's beyond just a general denial when we look at the affidavit in conjunction with the answer. The next thing they allege is that we – Counselor, you're – breach of contract actions, state law actions like breach of contract and negligence are preempted under the Carmack Amendment, right? Understood, Your Honor. And so I hear you referring to what sounds like a defense of privity, something that might go to the contractual nature of the action. That's not among the specified defenses. Understood, Your Honor. What I was going to say is all the allegations are detailed, and our defense is, in fact, that we maintained the temperature and the product was picked up from the warehouse in Philadelphia, already defective. And it's detailed in the affidavit. And the case law clearly indicates that the district court could look at the affidavit. And the judge, in fact, does. What case law? The case – the citation slips my mind, but it is cited in my brief, that the court – there was a case that is cited where the answer was a general denial, but the court took the next step and looked at the affidavit. The affidavit, coupled with the answer, created and established the defense. Is that a matter of discretion on the part of the district court? Yes, it is. Yes, it is. But it's our position that the district court abused their discretion in, one, not reviewing the meritorious defense, but, two, simply by not setting aside the default, when even if we accept that the court didn't find meritorious defense, we did find – we did establish, at least in his finding, that we met two of the four factors. And two out of four is a close call. In the case law, I believe it's Groves v. Senator Capone, says basically the close call should go to the party moving to vacate default judgment, that this court is in favor of having cases decided on the merits. Having said that, with regard to the alternative sanction, had I known that attorney's fees would have taken care of resolving the default judgment, certainly my client would have been inclined to do that, as opposed to coming before the Third Circuit. It would have been much more simple and less painful, I'm sure. I hope it wasn't painful. No, no, no. It was very enjoyable, actually. I hope it wasn't painful, yeah. A little painful for them. Okay. We understand your respective positions. Thank counsel for your arguments, and we'll take the matter under advisement.